Yes, sir. Good morning, and may it please the court. Thomas Pullum for Appellant's United States Fish and Wildlife Service and the National Marine Fishery Service. I'd like to reserve four minutes for rebuttal, please. The deliberative process privilege exists to protect the quality of agency decision-making by allowing agency personnel to engage in frank discussions and to freely explore possibilities without fear that their deliberations will be publicly disclosed. Sierra Club here seeks the disclosure of draft opinions written in the course of an interagency consultation process, documents whose proposed conclusions were never adopted by the services. These documents lie at the heart of the deliberative process privilege. The district court's analysis, which turned on whether the documents had highlighting or notes in the margin, finds no support in this court's case law. Well, that wasn't the only thing that the court relied on. Didn't the court also apply some of the same standards that you're referring to? Well, I don't believe so. The court set out a few statements of law, but when it actually conducted its analysis for each document, it simply stated whether the document was a relatively polished draft and whether it had highlighting or comments in the margin that revealed subjective views. What I think that- Isn't that an important aspect, whether or not the internal deliberative process is being revealed by the document through the expression of internal views? So that could be one aspect of it, but it's not a sufficient analysis. A document doesn't need to have highlighting or notes on its face, indicating that something is a subjective view in order to fall within the privilege. As this court explained in National Wildlife Federation, documents whose disclosure allows a reader to reconstruct the agency's decision-making process is as inimical to the purposes of the privilege as the release of documents that on their face say, I believe this or this is my personal view. But this is my understanding of what happened here. There were biological evaluations by these two, not by the APA, but by separate agencies with regard to a proposed EPA rulemaking. They were finished with those. Then EPA changed the rule, changed the proposal. But with regard to what they were about, i.e. the proposal that existed at that point, they were done. Were they not? No, with respect, that's not true. And the declarants from the services expressly said so in their declarations. Mr. Fraser specifically said that as the deadline approached for when the services and the EPA had agreed drafts would be shared, as that deadline approached, all three agencies agreed that more work needed to be done to understand elements of the EPA's rule, which was still- But they were changing the rule. Well, he said, I think, two things. One, the services didn't understand the elements of the rule and the elements of the rule were still under consideration at EPA. So this was not a kind of clearly delineated step-by-step process. The nature of this consultation was that the three agencies here were engaged in a continuous consultation process. They met routinely, often more than once a week. They constantly exchanged- What are you talking about in the declarations? I'm sorry? Where in the declarations should I be looking for what you're describing? Sure. So a couple of things. In the Rouch Declaration, he says, by providing a draft- I'm sorry, this is at ER44. What paragraph? By providing a draft transmission to another agency, the service is not providing a final decision. The document remains a draft and is subject to change until final signature. In the Fraser Declaration, Fish and Wildlife Service, this is at ER59-60, Fish and Wildlife Service concluded that additional consultation was needed to better understand and consider the operation of key elements of EPA's rule, the elements of which were still being deliberated within EPA as well. So this was very much an ongoing process. These were, as Mr. Rouch explained, not final products, but drafts subject to change. You still have it. What paragraph says this? Where, I'm looking, you don't know, okay. I mean, ultimately what he says is, ultimately based on changes to the regulation, their service's final conclusion changed, yes. But this was about the then-proposed rule. The service preliminary determined that their regulation as then written may be likely to jeopardize it. So they wrote a draft RPA. And he's describing what I said, and then the rule changed. He never said their opinion changed about the original rule or that it would change. Well, again, on ER59-60, so this would be paragraph six, Fish and Wildlife Service concluded that additional consultation was needed to better understand and consider the operation of key elements of EPA's rule, the elements of which were still being deliberated within EPA as well. So this was an ongoing process. The rule was still being deliberated. That's what that declaration says. And the services were trying to understand the rule. What about whether or not these reports that are the only thing that the court is saying should be disclosed were final or very, very, very close to being final? I mean, if they were final, isn't that something that makes them more close to the kind of thing that could be disclosed? Because it's no longer a decisional issue. It's no longer a deliberative issue. This report is done regarding what the possible biological jeopardy is. This recommended reasonable or prudent alternative is done. We're going to give it to you now. How is that revealing some kind of internal decisional process? For several reasons. One, these drafts were never approved by the relevant decision makers for transmission to EPA as kind of official preliminary conclusions. So on their face, they proposed conclusions, but the relevant officials, and Mr. Fraser says, I did not sign this and approve it for transmission. Weren't they just about to be made public? No, no. What the declaration, or I'm sorry, what the regulation requires is upon the request of EPA, the draft is sent to EPA. Now, transmission to another part of the agency does not affect the deliberative process privilege. It's not another part of the agency. It's a different agency. I'm sorry, another part of the government. Exemption five specifically refers to intra-agency and inter-agency memory. I thought they were contemplating press releases or something. No, there are some emails that the Sierra Club points to, which are a little ambiguous as to exactly what is contemplated and who's doing it. Some of those people are in Leg Affairs, not actually the authors of the document. But the decision was, regardless of whether certain people in the services thought that it was possible that something might be disclosed, the relevant decision makers decided not to disclose it publicly or even to EPA. Well, they told EPA what it was going to say, and they did disclose pieces of it at a time. Pieces, but did not submit the entire, all three agencies agreed that the entire opinions would not be transferred as the kind of official preliminary view. And even once something is sent there under the regulation, it's still subject to further revision. Mr. Rauch specifically says it's not final when it's sent to EPA. It is true, because I've seen plenty of records in environmental cases that these draft opinions show up in the administrative record, not infrequently. Sometimes they are. In this case, they were not included. And this court has said several times that the disclosure of the agency, whether to disclose them or not. I'm sorry? Completely up to the agency, whether it's part of the administrative record or not. In this case, yes, Mr. Frazier said in a declaration in the Second Circuit case that the services discussed with the DOJ attorneys and the decision was made not to include it in the administrative record. And the guidance that Sierra Club points to. And that's probably because it was a better, different regulation that wasn't the actual ultimate regulation. Well, I. Which is what makes it final as to what was the actual then regulation. I mean, I can't speak to the kind of reasoning for why it was done or wasn't done. The point is, it wasn't disclosed there. And even if it were, that wouldn't prevent the privilege from attaching to the drafts as Sierra Club acknowledges. These were privileged when they were created and that privilege is maintained until it's waived by the agency. Well, as I understand the arguments to the contrary, there are one, these are really not opinion pieces at all. They're essentially factual scientific documents. So they don't reveal a decision making process because there's no decision. The decision is being made by EPA. This is just a report. Well, I appreciate you bringing that up. First, it's not true as Sierra Club suggests that the deliberative process privilege only affects, only covers policy decisions. Second, these documents were full, even if we are looking at whether it's a policy decision, they were full of policy considerations. The very kind of the whole enterprise is to determine whether an action that has not occurred yet is likely to jeopardize the continued existence of threatened species. This is the kind of predictive judgment that the deliberative process privilege protects. The definition in the- But this agency is not an action agency and it's not going to make a decision to do X or Y, right? The decision is in the opinion on whether to, the relevant decision is whether something will jeopardize or not. As the Supreme Court explained in Bennett v. Speer, these opinions have legal consequences once they're finally adopted because they changed the legal regime that the agency is subject to. And returning back to the kind of the policy and deliberative elements of these opinions, the regulation defines jeopardy as something that is, when an action is reasonably likely to significantly or to appreciably reduce the likelihood of survival. So at the very beginning, you have to consider the amount of risk that the services are willing to tolerate. Second, they have to look at the cumulative effects of not just the actions of the action agency, but state and private actors. So that requires consideration of, as the handbook explains, the economic, administrative, and legal hurdles that would be faced by such actors. Then when we even turn to what Sierra Club says is the kind of science nature,  The services have to evaluate what factors to consider, how to weigh them, how to address gaps or inconsistencies in the evidence. And then specific portions of these opinions are very clearly and expressly policy-based. We have, for example, the incidental take statements, where the service has to say whether the planned action will result in an incidental take of protected species and set out reasonable and prudent measures that would minimize incidental take and terms and conditions that the agency has to comply with. Those terms and conditions, as this court has said, alter the relevant legal regime and therefore our policy decisions. That's something this court has said. So even if we're accepting Sierra Club's framework, which again is not correct, these are replete with policy considerations. And I see that I have only a few minutes left. I'd like to reserve my time. Thank you. Good morning. May it please the court. My name is Reed Super and I represent the Sierra Club. As the Supreme Court and this court have said many times, in exemption five cases, the court should focus on the effect of the materials release. A document must be both pre-decisional and deliberative to be exempt from FOIA. Yes, Judge Wallace. Might as well get to the question right away. The problem I have is the opinion we're reviewing. The magistrate judge had a very brief opinion, but she selected whether or not it was a polished draft. And in nearly all of her decisions, she focused on, it was a polished draft. We have no case in the Ninth Circuit, nor have I found one in any other circuit or the Supreme Court that says that is the way that we review. It was an unpublished district court opinion and she chose to use that. I'm not being critical of you. This is what she did. What we ordinarily do is if a person has the wrong standard they're using, their opinion isn't worth much to us to review. And it's clear from Grumman and from Sears that the issue is real operative effect. I saw nothing in her opinion that she reviewed on that basis. Now usually when the lower court has failed to use the proper review, we vacate it and send it back to them to do it right. And it struck me that we're not getting any help out of the district court. And why wouldn't we do that in this case? That is, we don't have anything to review. Well, Your Honor, I would say two things in response to that. First, I believe the court took the proper approach. But before I get into that. The court, which court? District court, the magistrate judge. The magistrate judge. The court in this case. It wasn't reviewed by a district court judge. So it was a magistrate judge speaking for the court. Okay. Correct, Your Honor. Both sides submitted to the magistrate. So there was no Article III judge. Correct. I understand. And in addition, this court's review after Animal Legal Defense Fund, the en banc decision in 2016, as I understand it, this court reviews FOIA cases de novo. De novo, right. There's no abuse of discretion or fact finding here. Yeah, at this point, that's my understanding that it's a de novo review. So, but I would say that Judge LaPorte did take the proper approach. Judge LaPorte cited National Wildlife Federation and the other assembly, the other presidents from this court. I know that while going through all 12, all 16 documents, because there were 16 documents submitted to her for in-camera review. She used a shorthand as she went through each document and she referred to whether there were, she were not only polished draft, but she looked to see whether there were subjective comments, recommendations, or opinions. But the entirety of Judge LaPorte's opinion, she started off by setting out the standard and noting that courts focus on the effect of the material's release. And that from assembly, we have that. But if we conclude that polished drafts has nothing to do with the proper review, wouldn't we have to send it back for her to appropriately accomplish that for us? Well, I don't believe so, Your Honor, because I think that your review is de novo. We just review it without regard to the polished draft standard. If that were to be the case, the court has the documents for your own in-camera review. And a polished draft is, I would contend, the opposite of a rough draft, the opposite of a working draft. In National Wildlife Federation, this court said that the documents at issue there were working drafts. And actually, I think very similar, the court took a very similar approach in that case. In National Wildlife Federation, this court said these were working drafts prepared by, quote, lower-level Forest Service personnel whose opinions and recommendations serve in the decision-making calculus. They constitute the give and take of the Forest Service and represent the mental processes of the agency in considering alternative courses of action. But if we followed that, all we do is have the government never do anything in final form. I mean, it seems clear that they could hide the football if we're going to use polished draft as even a part of what we're going to talk about. All you do is make a lot of suggestions and make sure the typos are in there and everything, and you can say it's not a polished draft. Well, Your Honor, what the Supreme Court has said, there's obviously a tension, undoubtedly, between the purpose of FOIA on the one hand and the purpose of Exemption 5 on the other. And what the Supreme Court has said is that courts should apply a flexible common-sense approach, not wooden, not categorical, to find a workable balance between the public's right to know and the agency's ability to function. So it wouldn't be a scribble, keeping a label that says it's draft. That would never carry the day because it's not a categorical approach. It's a common-sense, workable approach with the exemption to be narrowly construed because the objective, the dominant objective of the act is disclosure, not secrecy, and the burden is on the government to prove both elements of the test. So it's not only whether there is a polished draft or not. That's certainly one factor. A case cited, it's one factor, Your Honor. In the- My understanding is that it was relevant, at least what I thought she meant by polished draft, was it was really the final draft with regard to what was then on the table. There was nothing more to be done. What happened was the circumstances changed because EPA changed the regulation or the proposed regulation. So with regard to what it was addressing, which was the regulation at the time, there was, it was done, except for signature. There was, nobody suggested there was anything more to be said about what was then on the table. That's exactly right, Your Honor. That's exactly right. And the facts tell that story. And the statements in the declarations from two of the services officials are simply not credible and not consistent with the facts that, and I'll point the court to a couple of those facts. At SER 72 to 74, the services told EPA, we need your final rule revisions approved by your administrators in order for us to render our biological opinion. And they said, we need it by November 1st so we can deliver to you the draft by December 6th and the final by December 20th. So what was provided was, at that point, the final rule. It was not still being debated by EPA. The services told EPA, we can't render to biological opinion until we have. Presumably because they issued a jeopardy opinion, the EPA thought we better fix our rule. So that's, so in a way, it appeared to me that one set of deliberations were over. In essence, and they said, well, that rule isn't going to work. We better come up with another one. But on that rule, it was, they were basically done. Exactly right, Your Honor. It was all but signature. Gary Frazier, who submitted the declaration here, we have the emails that his assistant told the main drafter of the biological opinion. Gary Frazier's edits have been incorporated into this draft. I have an auto pen where I can add his signature. That was on the day it was due. Actually, the day after it was due is a little bit late. The other service, the National Marine Fishery Service, was preparing a rollout of the document. They were preparing to talk to Capitol Hill, to OMB. These were ready to go. There was also a statement that they were planning to put it in the administrative record. And they told EPA that they were planning to put it in the record. On December. Let me ask you this question. To the extent that the EPA did change their rule, and they changed their rule based on reviewing these reports, doesn't that make them pre-decisional? In other words, EPA used them while they were in the confidential rulemaking process, and then they changed their mind. And so doesn't that mean, doesn't that, isn't that sort of proof that they are pre-decisional documents? Well, Judge Berg, you're asking about the pre-decisional prong, and obviously they need to be both pre-decisional and deliberative. Okay, well, answer the pre-decisional part. Pre-decisional, well, we do make the argument that they're not pre-decisional because they were intent, they were prepared to convey the service's decision on whether the rule would cause jeopardy, convey that decision, that decision had been made, and convey it to EPA. We do not have in the record any affidavits from EPA saying that it's their deliberative process that is going to be jeopardy, that is going to be imperative. My understanding was that these are separate agencies which have a defined role, that the pre-deliberative process question is not with regard to EPA's deliberations, but with regard to their deliberations, once their role, to the end of their role in the operation. Yes. Now, is there any case law or any argument? I didn't see an argument here that EPA's, EPA clearly had made a final decision because it changed its decision. And has anybody argued that that matters? EPA is mentioned very little in the government's briefs. Again, they don't have an affidavit from EPA. They're not saying this is EPA's. Well, but it seems to me it's a legal question. When you say it's pre-decisional, whose decision are we talking about? Well, here we have the services had a statutorily mandated decision to make. And the services do say it's their decision. They say that on page three of their reply brief. They also say it in the opening brief. I don't have that page with me, but they say the decision was the jeopardy call. The biological opinion is the decision here. They don't say it's EPA's role. And I guess that's consistent with Bennett v. Speer and the fact that you can review the biological opinion as a final decision. But this was the final, the services. But the Supreme Court has basically held that these are independent final decisions in either context. In the Bennett v. Speer case, I presume you're speaking about. Yes. Clearly, it was the services had a statutory decision to make. It was their decision. And with respect to EPA's rule as it existed at that time, the declarations from the services, both of them say that the services concluded, not that some individual biologists within the services, but the services concluded that EPA's regulation in its then current form would jeopardize. The problem is nobody signed it. I'm sorry? The relevant person never signed it. The signature was not added, but they were ready to go. EPA learned on December 3rd that there were jeopardy opinions, that they were going to be put in the administrative record. December 6th, the National Marine Fisheries Service biological opinion was done. December 9th, the Fish and Wildlife. Everything was true, as you say. And then the ultimate, I don't know who, the head of the agency says, wait a minute, I have a big problem with this. I'm not signing it. Then what? Is that a free decision? I've now sat down and read very carefully this no jeopardy decision. And I don't think you've supported it. And you have to go back to the drawing boards. Well, there's no evidence. I would certainly acknowledge that that would be a much closer call, that there would be a deliberative process still going on. But there's no evidence of that. What happened here is EPA learned that they were jeopardy opinions. And we don't know why they weren't sent. They were ready. The administrative assistant said, I've got the auto pen, these are ready. On December 12th, EPA's general counsel got a call from the deputy solicitor of Fish and Wildlife to touch base about sending EPA a document. And then the RPAs were sent. So I don't know where the decision was made not to send them. It may not have been within the defendant agencies. It may have been in the White House. It may have been at OMB. Don't know where that decision was made. Clearly, someone within the government does not want the document to be released. But that's true in every way. But that has to do with the question of what does pre-decisional mean? At what level are we looking at whether it's pre-decisional? Suppose it was the White House. Would it be pre-decisional then? Well, the White House. OMB or somebody else. Well, if the White House said don't send the document, you know, that's, the services are the ones that have to make this decision. They made the decision to serve. Where is the evidence the White House was involved in the case? I, there's no evidence there. But aren't we getting pretty far afield when we start a conspiracy? And I hear about it on the news every night, but I think we can stay in this courtroom at least with the facts available for us. When I was looking for a definition of what piece of the government has to have not made a decision. The decision here is, I think, clearly the services. It's an Endangered Species Act requirement to decide whether the rule will jeopardize or not. It's clearly the services' decision. But even if it was pre-decisional, it's not deliberative. The effect would not be to impair the services' ability to carry out consultations in the future. They didn't put any trial balloons, any internal debates into the document that was ready to go. We haven't seen the document. The court didn't find, the lower court didn't find anything in there. This was not only a polished document, it was final. It was ready to go. Releasing that document would not impair the ability to consult, to conduct consultations. You said the lower court made a finding? I didn't read that. The lower court said that there were no subjective recommendations, comments or opinions, and that they were relatively polished drafts. But it's not a finding in the sense of a fact finding. We just look at the document. Right? Yes. You agree that this is all de novo? It's all de novo, exactly, Your Honor. Let me say, we ask that the court, as my time is running down here, affirm the judgment of the district court, in the alternative, if the court were to reverse at that point, we believe, and the government has conceded this, what the court should do is remand for the segregability analysis, which has never been done. The lower court, and this is at SCR 3, said I'm not convinced that these documents are entirely not segregable from the declarations. So she allowed 12 documents to be produced, one of them with one redaction, but there was never a segregability analysis. So at worst, we believe, unless this court would want to undertake the segregability analysis itself, that there should be a remand for the lower court to do so. Okay. Thank you very much. Thank you, Your Honor. Sir? Thank you. I have just a few points I'd like to. Can I ask first whether you are, whether the fact that this is being transmitted to EPA, which apparently had not made a final decision, does that matter at all? Well, I think it's kind of relevant for two reasons. One, Sierra Club seems to think that the transmission under the regulation is what makes this draft have some special final significance, and that didn't happen because all three agencies decided that they didn't want to do that yet because the drafts needed more work. No, because the EPA was changing its mind. That was clearly the reason. Well, what we have are the declarations, and the one from Fish and Wildlife Service says that the services didn't understand elements of the rule. Because they're now changing it. That was the same sentence. Well, because they were still under consideration. Right, right, right. But I think this gets to a fundamental issue, which is these drafts are not final until they're issued by the services. The Supreme Court said when it decided that these- Your position is- Excuse me. What did you say the Supreme Court said, bud? So in Bennett v. Speer, when it held that these biological opinions are final agency actions under the EPA, they said that the issuance of the opinion was the consummation of the decision-making process. This court in Center for Biological Diversity versus US Fish and Wildlife Service, that's at 450 F3rd at 940, said the consultation process is complete once the biological opinion is issued. Right, so your position- It wasn't issued here. All right, so I understand your position is that until the signature is on there, it is pre-decisional. Until it's adopted as agency policy. Until it's signed and issued as the opinion, it's not the policy of the agency. But if they had signed it and sent it over to EPA, and EPA then changed its rule, it would still have been a final agency. No, because the issuance of the opinion is not transmission to EPA for comment. The issuance is the public issuance. Under the regulation, the reason why the draft is shared with the action agency is so that the action agency can provide comment, and then the services can go back and revise the draft. The regulation, in fact, prohibits the services from issuing the opinion before that process has been completed. So that regulation is part of this deliberative consultative process. When Sierra Club refers to looking at the effect of the disclosure, the effect, as this court explained in the Assembly of California case, is whether it reveals the deliberative process. And it does here, because it allows a reader to compare the draft that's been disclosed with the final version and see what stayed in and what changed. Excuse me, when you say with the final version, is there a final version here? Yes, there is a final version, and Sierra Club has challenged it in the Second Circuit under the APA. But it's about a different proposed regulation. It's about the final regulation that EPA issued. Are you saying there's a difference between a final version of these Jeopardy! reports and the Jeopardy! reports that are at issue here? Or are you talking about final versions of rules? No, the final opinion that emerged from the consultation process. Biological Jeopardy! opinion. Well, they were no Jeopardy! opinions, but it was the final opinion to come out of this Section 7 consultation process about EPA's regulation. Those opinions had to do with the revised rule, correct? It was the regulation that EPA issued, yes. So the question that I have for you is, what would the effect be and how would it impair the services' ability to make their decisions if these particular biological opinions were to be revealed? Don't you have to show us how that would be impaired? No, the relevant inquiry is whether this would reveal the deliberative process, and it would show a couple of things. One, the services' thinking at this point in the consultation process. The consultation process began when EPA requested a formal consultation, and it ended when the services issued their final opinions in May of 2014. These were drafts, the drafts primarily sought by Sierra Club were from December, many months before. Second, it would reveal how the agency changed. This court said in the National Wildlife Federation that where a FOIA request seeks to disclose discrepancies between a draft and the final version, that that is probing the editorial and policy judgments of the agency in a way that's not permitted by the deliberative process privilege. And we can look to the D.C. Circuit's several opinions dealing with military histories, where a FOIA requester sought a draft of the history that was going through the internal review process. And the D.C. Circuit in a series of opinions, this is Dudman and National Security Archive, and a third, whose name escapes me right now, said these drafts can't be disclosed because they reveal the deliberative process. Someone could compare the draft with the final released history and see what decision-makers thought was appropriate to keep in and what decision-makers thought was not appropriate. You keep skipping over what seems to me to be the key point here, which is the opinion changed because the rule they were writing about changed, but nothing changed with regard to the rule they were first writing about. So, in that case, I mean, then what our declarant said here was that this preliminary jeopardy analysis was never adopted and the services abandoned these drafts and didn't issue that opinion. Right, because they rule-changed. I mean, if you're writing about... Yes, but that wouldn't make the draft... Agency, if you do this, that's going to hurt some animals. And the agency says, okay, we're going to do something else. So you've now finished with what would happen if the agency did what they said they were going to do first. I mean, what's bothering me is that we know from Bennett v. Speer that these are themselves final agency's decisions once they're done. And you can't mix them up with what the EPA is doing in response to them. No, but I think, to return again to the nature of the consultative process, this wasn't something where, this wasn't a process where EPA hands a regulation and then the services look at it and hand something back. This is an ongoing, iterative, continuous process. They're talking every week, sometimes once a week, having emails and conference calls. So the consultation process did not finish until the final issuance of the opinion. There wasn't a kind of final agency action on the EPA regulation that was never adopted because that opinion wasn't issued. The services decided that more work needed to be done. And so they abandoned that draft. But see, the services didn't, EPA did. No, the services abandoned their draft. Of course they abandoned their draft because it was about something that doesn't exist anymore. Well, and in that case, a draft that dies on the vine is still protected. The Supreme Court said that and the D.C. Circuit said that and National Security Archive. All right, you're way, way over your time. Anything you want to wrap up with? I'm sorry? Anything you want to wrap up with? We ask that the judgment be reversed. Thank you. Thank you all for your useful argument on Sierra Club versus United States Fish and Wildlife. And we go to High Q Lab Inc. versus LinkedIn Corp.
judges: Wallace, Berzon, Berg